**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No.  08-cv-01368-CMA

CYCLE LEE TYLER,

      Applicant,

v.

WARDEN MICHAEL ARELLANO, and
JOHN W. SUTHERS, Attorney General of the State of Colorado,

      Respondents.

---

**ORDER DENYING SECOND AMENDED APPLICATION
FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE**

---

Before the Court is the Second Amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket No. 6; Filed August 18, 2008] filed by Cycle Lee Tyler ("Applicant").  Respondents filed an Answer Brief objecting to the Application on December 10, 2008 [Docket No. 19].  Applicant did not file a traverse. The matter has been fully briefed and is ripe for resolution.  The Court has considered the relevant pleadings, the state court record, and the applicable case law, and is sufficiently advised in the premises.  For reasons set forth below, it is hereby ORDERED that the Application is DENIED.

## I.  BACKGROUND

Applicant challenges his conviction for one count each of attempted second degree murder and second degree assault with a deadly weapon.  *Application* [#6] at 2. The events giving rise to the conviction occurred during a drug transaction where

Applicant struck the victim several times in the head and then shot him in the shoulder.

Applicant was permitted to represent himself at his criminal trial. *Answer Brief* [#19] at

6. He contended that he was misidentified and had an alibi for the time of the shooting.

*Id.* Nevertheless, on November 9, 1998, Applicant was convicted by a jury in the

El Paso County District Court and sentenced to twenty-three (23) years in prison.

*Application* [#6] at 1-2.

Applicant filed a direct appeal of his conviction. The judgment of conviction

was affirmed by the Colorado Court of Appeals ("CCA"). *See People v. Tyler*, No.

99CA0849 (Colo. Ct. App. Aug. 9, 2001) (unpublished decision) ("*Tyler I*"). On January

14, 2002, the Colorado Supreme Court denied Applicant's petition for writ of certiorari

on direct appeal of *Tyler I*.

Applicant also filed a series of postconviction relief motions in the trial court.

On May 1, 2002, Applicant filed a postconviction relief motion to correct his sentence.

The motion was denied on May 2, 2002. On May 13, 2002, Applicant filed a motion to

reconsider his sentence. The motion was denied on May 15, 2002. On June 5, 2003,

Applicant filed a motion to supplement his postconviction Rule 35(c) motion and a

motion for an evidentiary hearing on the Rule 35(c) motion. Attached to the motion to

supplement was a document labeled "Exhibit A" that purported to be an original Rule

35(c) motion. The trial court denied the motions to supplement and for an evidentiary

hearing on July 2, 2003, finding that the claims Applicant sought to raise in the motion to

supplement should have been raised on direct appeal. On appeal, the CCA affirmed

the trial court's ruling with respect to the claims raised in the motion to supplement and

remanded the case to the trial court to determine whether Exhibit A was before the trial

court when it ruled on the motion to supplement and, if so, to address the issues raised in Exhibit A. *See People v. Tyler*, No. 03CA1516 (Colo. Ct. App. Feb. 3, 2005) (unpublished decision) ("*Tyler II*").  On May 16, 2005, the Colorado Supreme Court denied Applicant's petition for writ of certiorari from the order of the CCA in *Tyler II*.

On remand, the trial court determined that the Rule 35(c) motion attached as Exhibit A had been before it as a practical matter and, on September 29, 2005, the trial court denied the Rule 35(c) motion.  The CCA affirmed the denial of postconviction relief. *See People v. Tyler*, No. 05CA2260 (Colo. Ct. App. Nov. 15, 2007) (unpublished decision) ("*Tyler III*").  On May 19, 2008, the Colorado Supreme Court denied Applicant's petition for writ of certiorari from the order of the CCA in *Tyler III*.

Applicant filed this lawsuit on June 30, 2008 [Docket No. 1] and filed his operative Application on August 18, 2008 [Docket No. 6].  The Application raises thirty-three (33) claims for relief. *See Order* [#16] at 3-6.  Those claims are set forth below.

(1)     Applicant was subjected to an illegal warrantless arrest.

(2)     Applicant's right to a speedy trial was violated because: (a) he was not brought to trial within six (6) months of entering a plea of not guilty; (b) the prosecutor filed amended charges over defense objection on the day of trial; (c) the late filing of amended charges further delayed the trial because Applicant was entitled to a preliminary hearing on the amended charges; (d) the trial court granted a continuance from April 21, 1997 to September 15, 1997; (e) trial was delayed after the filing of a psychiatric report in connection with Applicant's competency evaluation; and (f) the trial court refused to set a trial date at the time when Applicant's competency evaluation was ordered.

(3)     Counsel on direct appeal was ineffective because counsel: (a) failed to challenge Applicant's aggravated-range sentence for attempted second degree murder; (b) failed to raise a claim of instructional error; (c) failed to obtain a complete transcript of the trial; and (d) failed to challenge the prosecutor's suppression of a police report and a ballistics report.

3

(4)     The trial court improperly communicated with an alternate juror and substituted the alternate juror for a juror who became ill without Applicant being present.

(5)     The trial court improperly responded to a jury question without Applicant being present.

(6)     The trial court erred in refusing to instruct the jury on the definition of "possession" in the context of possession of a firearm.

(7)     The trial court erred in refusing to instruct the jury on the evaluation of eyewitness testimony.

(8)     The trial court erred by not instructing the jury on the use of evidence of another criminal act.

(9)     The trial court denied Applicant his right to counsel at his preliminary hearing on the amended charges.

(10)    The trial court erred in admitting evidence of a projectile because the prosecution could not show an unbroken chain of custody.

(11)    The trial court erred in admitting hearsay testimony.

(12)    The trial court erred in failing to issue a writ to secure the testimony of two inmate witnesses.

(13)    The trial court erred in refusing to allow Applicant to present surrebuttal testimony.

(14)    The trial court erred in not allowing Applicant to present evidence of an incident of prosecutorial misconduct in the hallway during trial to support his theory of a governmental conspiracy.

(15)    The trial court denied Applicant his right to counsel when it refused to replace attorney Dennis Sladek.

(16)    The prosecution committed misconduct during closing arguments by giving the impression that a witness had changed his statement because he was afraid of Applicant.

(17)    The trial court erred in failing to grant a directed verdict of acquittal on the charge of attempted first degree murder.

4

(18)   The jury instructions omitted elements of the crime of attempted first degree murder.

(19)   The jury verdicts of not guilty for attempted first degree murder and guilty for attempted second degree murder are inconsistent.

(20)   The jury verdicts of guilty for both attempted second degree murder and second degree assault with a deadly weapon are inconsistent.

(21)   The trial court improperly instructed the jury on the burden of proof.

(22)   The evidence was insufficient to support a conviction for attempted second degree murder.

(23)   The trial court erred by failing to address all of the issues Applicant raised in his postconviction Rule 35(c) motion.

(24)   The trial court erred in allowing the prosecution to call a witness the prosecution knew would invoke his Fifth Amendment rights.

(25)   Attorneys Dennis Sladek and Torrence Base were ineffective during the time they represented Applicant by exhibiting racial bias and refusing to investigate facts, interview witnesses and file pretrial motions.

(26)   A juror was falling asleep during the trial.

(27)   The in-court identification of Applicant by several witnesses was tainted by an impermissibly suggestive photographic lineup.

(28)   The filing of amended charges on the day of trial violated Applicant's rights.

(29)   The trial court erred in denying Applicant's motion for a new trial.

(30)   The prosecution tested various items of physical evidence more than once.

(31)   The trial court erred (a) in failing to make a final determination that Applicant was not competent on April 13, 1998, and (b) in subjecting Applicant to trial when he was not competent.

(32)   The trial court erred by finding Applicant competent to stand trial on July 27, 1998.

(33)   Cumulative error denied Applicant a fair trial.

5

Respondents concede that the instant action is timely filed pursuant to 28 U.S.C. § 2244(d).  *Answer Brief* [#19] at 9-10.  Prior to assignment of the case to this Court, Claims 17, 23, 28 and 33 were dismissed for failure to raise constitutional error or failure to exhaust.  *Order* [#16] at 11-14.  Accordingly, twenty-nine (29) claims remain for review.[1]  Because there is overlap among certain claims, or where efficiency dictates that certain claims be resolved together, the Court has chosen to combine the analysis of several claims and will so note where appropriate.

## II.  LEGAL STANDARD

### A.  APPLICANT'S STATUS

Applicant is proceeding *pro se*.  Therefore, the Court must construe his Application liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status.  *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993).  However, the Court is not an applicant's advocate and must nevertheless deny an application that is based on vague or conclusory allegations.  *Hall*, 935 F.3d at 1110.

---

[1] To the extent that Respondents raise exhaustion arguments in their Answer Brief which have already been rejected on preliminary review, see *Order* [#16] at 7-10, the Court does not consider them.  The prior decision operates as the law of the case and merely readdressing previously-asserted arguments does not prompt the Court to revisit them.  *See Gordon v. Arellano*, 08-cv-02538, 2010 WL 1790410, at *5 (D. Colo. May 3, 2010) (unpublished decision) (citing *Clark v. State Farm Mut. Auto. Ins. Co.*, 590 F.3d 1134, 1140 (10th Cir. 2009)) (noting that it is only appropriate to depart from the law of the case where the previous decision was clearly erroneous or works a manifest injustice).

**B.     STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 2254(d), an application for writ of habeas corpus may be granted only if it is based on an underlying state court decision that (1) is "contrary to . . . clearly established Federal law, as determined by the Supreme Court," (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court," or (3) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); *see also Trice v. Ward*, 196 F.3d 1151, 1159 (10th Cir. 1999).

The first and second standards of review involve claims of legal error. Both standards require that clearly established federal  law warrants an analysis on the merits.  *House v. Hatch*, 527 F.3d 1010, 1018 (10th Cir. 2008).  A state court decision is contrary to clearly established federal law when it contradicts prior Supreme Court precedent and arrives at a conclusion that is "diametrically different" from that precedent.  *Williams*, 529 U.S. at 406.  A state court decision involves an unreasonable application when it utilizes the correct legal principle but reaches an "objectively unreasonable" outcome based on the facts at issue.  *Id.* at 409.  However, the Court "may not issue the writ simply because [it concludes] in [its] independent judgment that the state court applied the law erroneously or incorrectly. Rather, [the Court] must be convinced that the application was also 'objectively unreasonable.'"  *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 566 n.4 (10th Cir. 2000), *overruled on other grounds by McGregor v. Gibson*, 248 F.3d 946 (10th Cir. 2001).

The third standard of review involves claims of factual error.  Pursuant to this Court's habeas review of state court decisions involving factual conclusions, a presumption of correctness exists regarding state trial and appellate court findings of fact.  *Sumner v. Mata*, 455 U.S. 591, 592-93 (1982).  As such, Applicant bears the burden of rebutting this presumption "by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); *see Houchin v. Zavaras*, 107 F.3d 1465, 1470 (10th Cir. 1997).  While this standard requires a substantial showing by Applicant, "deference does not by definition preclude relief."  *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

### III.  ANALYSIS

### A.    ILLEGAL WARRANTLESS ARREST (CLAIM 1)

Applicant contends that he was subjected to an illegal warrantless arrest when he was charged with the commission of the crime at issue while already detained on other charges.  *Application* [#6] at 14.  Given the fact that he was already in custody, no arrest warrant was obtained.  Applicant contends that this violated his right to due process such that "the evidence in the case [should] be suppressed."  *Id.*  Although Claim 1 asserts due process violations pursuant to the Fifth and Fourteenth Amendments, the Court finds that this is merely a Fourth Amendment claim by another name.  *See Castro v. United States*, 540 U.S. 375, 381 (2003) (noting that it is appropriate for federal courts to ignore the legal labels attached to a *pro se* party's claims "to create a better correspondence between the substance of [the party's claims] and [the] underlying legal basis").

As is discussed at length below, the classification of Claim 1 as a Fourth Amendment claim is significant because of the Court's limited habeas corpus review of Fourth Amendment claims.  Regardless, Applicant's "effort[] to couch this situation as presenting a federal due process matter is unavailing.  His claim is the same as other garden variety Fourth Amendment claims, barred . . . from consideration as a basis for federal habeas relief . . . ." *Washington v. Oklahoma*, 149 F.3d 1192 (table) (10th Cir. 1998); *see also Gilmore v.* Marks, 799 F.2d 51, 57 (3d Cir. 1986) ("[P]etitioner may not cloak his or her Fourth Amendment claim in due process clothing to circumvent [the federal habeas review bar] . . . .  Accepting [petitioner's] argument would allow habeas petitioners to transmogrify every unsuccessful Fourth Amendment claim into a due process violation."); *Phillips v. Sirmons*, No. CIV-01-45, 2008 WL 1701093, at *35 (E.D. Okla. Apr. 9, 2008) (unpublished decision) (interpreting due process challenge regarding denial of motion to suppress as Fourth Amendment challenge which was barred from habeas review).

The Fourth Amendment protects against unreasonable searches and seizures and is generally enforced through the exclusionary rule.  *See, e.g.*, *Illinois v. Gates*, 462 U.S. 213, 254 (1983); *Stone v. Powell*, 428 U.S. 465, 482-87 (1976).  "The purpose of the exclusionary rule is not to redress the injury to the privacy of the search victim . . . . Instead, the rule's prime purpose is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures." *United States v. Calandra*, 414 U.S. 338, 347 (1974).  Although habeas corpus review is generally available for most constitutional violations, the Supreme Court has made an exception for Fourth Amendment claims due to the nature of the

violation and remedy.  *See Stone*, 428 U.S. at 494-95.  In *Stone*, the Supreme Court

held that "where the State has provided an opportunity for full and fair litigation of a

Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus

relief on the ground that evidence obtained in an unconstitutional search or seizure

was introduced at his trial."  *Id.* at 494.  In the federal habeas corpus context, "the

contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment

is minimal, and the substantial societal costs of application of the rule persist with

special force."  *Id.* at 495.

Although the Supreme Court has not precisely defined the phrase "opportunity

for full and fair litigation," the Tenth Circuit has determined that it

> includes, but is not limited to, the procedural opportunity to raise or
> otherwise present a Fourth Amendment claim. . . .  Furthermore, it
> contemplates recognition and at least colorable application of the correct
> Fourth Amendment constitutional standards.  Thus, a federal court is not
> precluded from considering Fourth Amendment claims in habeas corpus
> proceedings where the state court wilfully refuses to apply the correct and
> controlling constitutional standards

*Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).

Here, Applicant does not deny that he received state court review.  A

suppression hearing was held, in part, to address Applicant's warrantless arrest.

*See, e.g.*, *Record* vol. October 16, 1998 at 178-201.  Further, Applicant raised the

circumstances surrounding his warrantless arrest to the trial court in a postconviction

relief motion and then again on appeal to the CCA.  *See Tyler III*, No. 05CA2260, slip

op. at. 9-10.  Applicant does not assert that these proceedings were not "full and fair,"

but instead, merely presents his disagreement with the rulings of the state courts.  *See*

*Stone*, 428 U.S. at 494.

10

The record demonstrates that the procedural opportunity to raise or otherwise present Applicant's Fourth Amendment claim was clearly afforded to him.  While the Colorado state courts primarily looked to state law in making their decisions, the law upon which they relied was solidly based on search and seizure precedent as set forth by the United States Supreme Court at that time [Docket No. 19-11 at 3-4].  *See Tyler III*, No. 05CA2260, slip op. at. 9-10 (noting that warrantless arrest did not amount to "fruit of poisonous tree").  Under this precedent, the state courts determined that there was no constitutional concern regarding Applicant's arrest for the present crime while already in custody for another offense [Docket No. 19-11 at 3-4].  *See Tyler III*, No. 05CA2260, slip op. at. 9-10.  Applicant has failed to present any well-pled facts from which it can be inferred that the trial court or CCA failed to recognize or wilfully refused to apply the correct and controlling constitutional standards in this regard, and no such evidence is apparent from the record.  Rather, Applicant merely disagrees with the result and would like this Court to consider the Fourth Amendment issue anew.  However, pursuant to *Stone*, Applicant is not entitled to seek federal habeas corpus review of the legitimacy of the trial or appellate courts' determinations that Applicant's warrantless arrest was not a constitutional violation.  Accordingly, Claim 1 is denied.

**B.    SPEEDY TRIAL RIGHT (CLAIM 2)**

Applicant raises a number of challenges relating to the length of time it took to bring him to trial.  *Application* [#6] at 14-16.  Respondents argue that none of Applicant's challenges were adequately raised in state court and, therefore, are

procedurally defaulted.[2]  Specifically, Respondents note that because Applicant failed to bring these challenges on his direct appeal, he was barred from pursuing them for the first time in his postconviction relief proceedings.  *Answer Brief* [#12] at 21-22.  As such, the CCA refused to consider any of Applicant's speedy trial right challenges.  *See Tyler III*, No. 05CA2260, slip op. at 5-6.

Under these circumstances, Applicant has procedurally defaulted this claim. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  However, an applicant "may excuse a procedural default by demonstrating either 'cause for the default and actual prejudice as a result of the alleged violation of federal law, or . . . that failure to consider the claims will result in a fundamental miscarriage of justice.'"  *Klein v. Neal*, 45 F.3d 1395, 1400 (10th Cir. 1995) (quoting *Brecheen v. Reynolds*, 41 F.3d 1343, 1353 (10th Cir. 1994)).  To show cause, an applicant must prove "that some objective factor external to the defense impeded [applicant's] effort to comply with the State's procedural rule" and that he has been prejudiced by this imposition.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Additionally, the fundamental miscarriage of justice test requires a showing that a "constitutional error . . . 'has probably resulted in the conviction of one who is actually innocent.'"  *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496).

---

[2] Although Respondents did not raise procedural default as a basis for dismissing certain claims in their preliminary response, they reserved the right to raise the defense at a later time.  *See Pre-Answer Brief* [#12] at 18.  In their Answer Brief, they raise procedural default as a defense in relation to this claim and Claims 4, 7-11 & 13.  Because Respondents' Answer Brief sufficiently put Applicant on notice of the potential for dismissal of these claims on the basis of procedural default, the Court considers the procedural default defense and, where appropriate, resolves the impacted claims on this basis.

Applicant did not file a traverse or address whether the procedural default of this claim should be excused.  Under these circumstances, Applicant has provided no basis for the Court to review the procedurally defaulted claim.  Nor can the Court independently discern any basis for reviewing the claim at first blush.  This is particularly true here, where although Applicant raised an ineffective assistance of counsel claim regarding his appellate counsel's failure to pursue certain claims on direct appeal against his wishes, he did not argue that counsel should have, but failed to, pursue this particular claim on direct appeal.  *See, e.g.*, *Tyler III*, No. 05CA2260, slip op. at 23. Accordingly, there is no indication that Applicant can establish cause for his failure to timely pursue this claim or that he suffered prejudice.  Nor is there any basis to conclude that review of this claim for the first time would prevent a miscarriage of justice.[3]  *See Coleman*, 501 U.S. at 750 (holding that procedurally defaulted claims are unexhausted and precluded from federal review where cause, prejudice or a miscarriage of justice are not present).  Accordingly, Claim 2 is denied.[4]

---

[3] There is ample evidence of Applicant's guilt in the record such that it would not appear that Applicant could credibly argue that it would be a manifest injustice not to consider any procedurally defaulted claims.  This determination is further bolstered by a review of the record at the conclusion of evidence at trial.  At that time, Applicant asked if he could plead guilty. *Record* vol. November 6, 1998 at 98, 160-62.  He informed the Court that he had considered the evidence against him and felt that it had been proven that he was guilty of the charged crimes. While the trial court rejected Applicant's request and allowed the case to go to the jury, this history also suggests that Applicant would not be able to show that his conviction was a miscarriage of justice.

[4] Regardless, the Court notes that Applicant's challenges primarily relate to state speedy trial statutory rights.  Even were the Court to consider the merits of the claim, it would be subject to denial on the basis that any alleged error does not implicate a federal constitutional right. *See Davis v. Wainwright*, 547 F.2d 261, 264 (5th Cir. 1977).

C.      **INEFFECTIVE ASSISTANCE OF COUNSEL (CLAIMS 3 AND 25)**

Applicant contends that counsel on direct appeal was ineffective because counsel (a) failed to challenge Applicant's aggravated-range sentence for attempted second degree murder; (b) failed to raise a claim of instructional error; (c) failed to obtain a complete transcript of the trial; and (d) failed to challenge the prosecutor's alleged withholding of a police report and a ballistics report (Claim 3). *Application* [#6] at 16-18. Applicant also contends that counsel Dennis Sladek and Torrence Base were ineffective during the time period when they represented him for failing to investigate, interview witnesses and file pretrial motions (Claim 25). *Id.* at 30.

Under *Strickland v. Washington,* 466 U.S. 668 (1984), to establish ineffective-ness of counsel, Applicant must show (1) that his counsel's actions fell below an objective standard of reasonableness, and (2) that counsel's conduct prejudiced the proceedings such that, but for counsel's errors, the outcome of the proceedings would have been different. *Id.* at 687. The Court need not address both prongs if the Applicant fails to make a showing on one of them. *Cooks v. Ward*, 165 F.3d 1283, 1292-93 (10th Cir. 1998). "Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Moreover, for counsel's performance to be constitutionally ineffective, "it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999).

In determining prejudice, the habeas corpus applicant "must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Strickland*, 466 U.S. at 694.  In other words, "[w]hen a

defendant challenges a conviction, the question is whether there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt

respecting guilt." *Id.* at 695.

    1.   <u>Appellate Counsel (Claim 3)</u>

As noted above, Applicant contends that counsel on direct appeal was ineffective

because counsel (a) failed to challenge Applicant's aggravated-range sentence for

attempted second degree murder; (b) failed to raise a claim of instructional error; (c)

failed to obtain a complete transcript of the trial; and (d) failed to challenge the

prosecutor's withholding of a police report and a ballistics report.  The CCA addressed

each of Applicant's claims of ineffective assistance of appellate counsel in Applicant's

second postconviction appeal.  Specifically, the CCA found that because Applicant "was

convicted of a crime of violence," his sentence was reasonably elevated above

the presumptive range.  *Tyler III*, No. 05CA2260, slip op. at 24 (citing Colo. Rev. Stat.

§ 18-1-105, recodified at § 18-1.3-401).  The CCA noted that where, as here, the facts

adequately supported the aggravated sentence based on the convicted crime, there can

be "no error in the court's conclusion and therefore no prejudice to [Applicant]." *Id.*

Based upon an independent review of the record and controlling law, this Court

agrees with the CCA.  Applicant's conviction for attempted second degree murder was

based upon testimony and evidence showing that Applicant struck the victim in the head

multiple times and fired several shots at him at close range.  On this basis, the jury

convicted Applicant of attempted second degree murder and second degree assault

with a deadly weapon.  *Record* vol. March 17, 1999 at 76-77.  These facts could

reasonably lead a sentencing court to conclude that the aggravating nature of the crime, as found by the jury, merited a sentence above the presumptive limit. *See generally Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *Blakely v. Washington*, 542 U.S. 296 (2004). Because any challenge of the aggravated nature of Applicant's sentence would not have been successful, appellate counsel was not ineffective for failing to raise the issue on direct appeal.

The CCA also noted that because it found that the jury's verdict was not inconsistent, appellate counsel was not ineffective for failing to raise a challenge that the inconsistent verdict was the result of erroneous jury instructions. *Tyler III*, No. 05CA2260, slip op. at 15-18, 24. As will be discussed later in resolution of Claims 19 and 20, the Court agrees that the jury's verdict was not inconsistent. Therefore, any alleged error in relation to this claim did not prejudice Applicant.

In relation to Applicant's third allegation regarding appellate counsel's performance, the CCA held that appellate counsel's failure to make the entire trial transcript available to the court on direct appeal was not subject to review because Applicant had also failed to make the alleged missing transcript available for review on postconviction relief. *Tyler III*, No. 05CA2260, slip op. at 25-26. The transcript at issue apparently contained opening statements and the examination of two prosecution witnesses. *See Application* [#6] at 18. Interpreting Applicant's argument liberally, he apparently contends that, had the transcript been a part of the appellate record, it would have demonstrated that he was not at the scene of the crime. However, Applicant fails to indicate which testimony would have changed the CCA's analysis on appeal. Nevertheless, having reviewed the entire record provided to it, which admittedly

contains gaps, the Court notes that Applicant's conviction was well supported by the

evidence.  Moreover, given that the missing portions of the transcript either did not

contain evidence (opening statements) or contained the testimony of prosecution

witnesses, the Court is hard-pressed to imagine what might have been contained

therein that could have changed the outcome on appeal.  *See United States v. Fisher*,

38 F.3d 1144, 1147 (10th Cir. 1994) (noting that court is "not required to fashion

[Applicant's] argument for him where his allegations are merely conclusory in nature

and without supporting factual averments").  Therefore, any alleged error in relation to

this claim did not prejudice Applicant.

Finally, in relation to Applicant's fourth allegation regarding the prosecution's

withholding of evidence, the CCA concluded that Applicant had failed to adequately

allege that his alleged inability to access certain police reports impacted the outcome

at trial.  *Tyler III*, No. 05CA2260, slip op. at 25.  Applicant provides no additional

information to this Court indicating how access to the reports would have affected his

conviction.  Applicant must do more than make conclusory assertions in his Application

– he must specifically show how any alleged error prejudiced him.  *See Fisher*, 38 F.3d

at 1147.  He failed to do so here.  Therefore, any alleged error on direct appeal related

to the failure to raise this challenge does not implicate a colorable ineffective assistance

of counsel claim.  In summary, Applicant has failed to show how he was prejudiced by

appellate counsel's conduct.  In the absence of a violation of a federal right, or any

unreasonable application of the facts by the state courts, habeas corpus relief is not

available.  Accordingly, Claim 3 is denied.

2.  Trial Counsel (Claim 25)

As noted above, Applicant contends that counsel Dennis Sladek and Torrence Base were ineffective during the time period when they represented him for failing to investigate, interview witnesses, and file pretrial motions.  Although the Application does not contain any further detail regarding this claim, the Court assumes that Applicant intended to raise the argument he raised during his second postconviction appeal, i.e., that had an investigation been undertaken, counsel would have known that the prosecution's eye witness (Everett Young) intended to withdraw his statement against Applicant.  *See Tyler III*, No. 05CA2260, slip op. at 21.  Further, on this basis, Applicant apparently argues that counsel would have known to file a motion to dismiss or to seek bond reduction.  *See id.*  In resolving this claim, the CCA found that, because the eye witness' changed testimony favored Applicant, he was not prejudiced by any failure to investigate.  *See id.*

After conducting an independent review of the record, this Court agrees with the CCA.  Moreover, despite the fact that the eye witness recanted his identification, the evidence against Applicant at trial was overwhelming.  Therefore, the Court cannot conclude that Applicant was prejudiced by counsels' failure to file pretrial motions to address the witness' recantation.  *See, e.g.*, *Coleman v. Brown*, 802 F.2d 1227, 1234 (10th Cir. 1986) ("[T]he Sixth Amendment does not require that every possible motion be filed, but only those having a solid foundation."); *see also United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995) ("Counsel is not required by the Sixth Amendment to file meritless motions.").  The lack of any demonstrable prejudice defeats Applicant's claim.

To the extent that Applicant intended to raise other investigative failures of counsel, his claim lacks sufficient detail or merit.  First, on these pleadings, there is no basis to conclude that counsel's conduct fell below an objective standard of reasonableness or that Applicant was prejudiced by these alleged failures.  *See United States v. McMahon*, No. 04-5011, 2005 WL 115506, at *10 (10th Cir. Jan. 20, 2005) (unpublished decision) ("A habeas petitioner cannot succeed on an ineffective assistance claim by showing that there was some evidence that the trial counsel failed to investigate.  Rather, the habeas petitioner must demonstrate that the failure to investigate additional evidence was objectively unreasonable and would have produced a different result at trial."). Second, Applicant represented himself at trial and any investigation of witnesses or defenses that needed to be undertaken should have and could have been conducted by Applicant.  This is true regardless of whether his former counsel failed to do so.[5]  In the absence of a violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claim 25 is denied.

---

[5] To the extent that Applicant also contends that counsel exhibited racial bias toward him, the Court notes that Applicant has failed to provide any detail, other than this conclusory assertion, to support his contention.  *See Application* [#6] at 30.  The Court cannot conclude that Applicant suffered prejudice from counsel's alleged racial bias without any example of counsel's conduct or its relationship to negative consequences Applicant may have suffered as a result.  *See, e.g.*, *Fisher*, 38 F.3d at 1147; *Hall*, 935 F.2d at 1110.  Moreover, the Court's review of the three prior state court appellate decisions rendered does not reveal any instance in which the courts were asked to address the impact of any alleged racial bias.  Although Respondents do not argue that Applicant failed to exhaust this portion of the claim, on the present record, the Court has no prior appellate decision to review or to supplement Applicant's conclusory allegation that counsel exhibited racial bias.  Accordingly, in relation to this allegation, Applicant has failed to assert a reviewable claim for relief.

**D.      TRIAL COURT INTERACTION WITH JURORS (CLAIMS 4 AND 5)**

1.      Substitution of Juror (Claim 4)

Applicant contends that he was denied a fair trial when the trial court communicated with a substitute juror and substituted that juror for an ill juror outside the presence of Applicant.  *Application* [#6] at 18-19.  Respondents argue that Applicant failed to adequately raise this challenge in state court and, therefore, the claim is now procedurally defaulted.  Specifically, Respondents note that because Applicant failed to bring this challenge on direct appeal, he was barred from pursuing it for the first time in his postconviction relief proceedings.  *Answer Brief* [#12] at 23-24.  As such, the CCA refused to consider the merits of Applicant's juror substitution challenge on appeal from his request for postconviction relief.  *See Tyler III*, No. 05CA2260, slip op. at 5-6.

Under these circumstances, the Court agrees that Applicant has procedurally defaulted this claim.  As noted above, Applicant did not file a traverse or address whether the procedural default of this claim should be excused.  Therefore, Applicant has provided no basis for the Court to review the procedurally defaulted claim.  Nor can the Court independently discern any basis for reviewing the claim at first blush.  This is particularly true here, where although Applicant raised an ineffective assistance of counsel claim regarding his appellate counsel's failure to pursue certain claims on direct appeal against his wishes, he did not argue that counsel should have, but failed to, pursue this particular claim on direct appeal.  *See, e.g.*, *Tyler III*, No. 05CA2260, slip op. at 23.  Accordingly, the record does not reveal any cause for Applicant's failure to

timely pursue this claim in state court, or any prejudice that may have resulted.[6]  *See*

*Coleman*, 501 U.S. at 750.  Accordingly, Claim 4 is denied.

    2.    <u>Jury Question (Claim 5)</u>

    Applicant contends that he was denied a fair trial because the trial court

answered a jury question without Applicant being present.  *Application* [#6] at 19.

During their deliberations, the jury sent a question to the trial court for an expanded

definition of "after deliberation."  *Answer Brief* [#19] at 25.  However, before the trial

court could respond, the jury withdrew its question.  Despite the fact that no question

was pending, the trial court communicated with the jury and reminded it to utilize the

jury instructions provided.  *Id.*  On appeal, the CCA noted that it did not condone the trial

court communicating with the jury outside the presence of Applicant, but held that "there

was no potential for prejudice, and any possible error was harmless" given the fact that

the jury withdrew its question and that the trial court did nothing more than refer the jury

to the instructions. *Tyler III*, No. 05CA2260, slip op. at 14-15.

    Pursuant to the Sixth and Fourteenth Amendments of the Constitution, a criminal

defendant has the right to be personally present at all critical stages of his trial.

"[A] defendant is guaranteed the right to be present at any stage of the criminal

proceeding that is critical to its outcome if his presence would contribute to the fairness

of the procedure."  *Kentucky v.  Stincer*, 482 U.S. 730, 745 (1987); *Illinois v. Allen*, 397

U.S. 337, 338 (1970).  However, where a defendant's "presence would be useless or,

---

[6] *See also supra* note 3.

the benefit but a shadow," his presence is not required.  *Stincer*, 482 U.S. at 745

(citation omitted); *Bland v. Sirmons*, 459 F.3d 999, 1021 (10th Cir. 2006).

Generally, "[a] question from the jury must be answered in open court" and only

after giving the defense "an opportunity to be heard."  *United States v. Carter*, 973 F.2d

1509, 1515 (10th Cir. 1992).  While a criminal defendant does not have a constitutional

right "to be present at every interaction between the trial judge and a juror," *United*

*States v. Santiago*, 977 F.2d 517, 522 (10th Cir. 1993); *see also Esnault v. Colorado*,

980 F.2d 1335, 1337 (10th Cir.1992) (there is no due process right to be present when

counsel and the court meet on a jury question), because Applicant was representing

himself, his presence was arguably warranted.  *See United States v. Scisum*, 32 F.3d

1479, 1482-83 (10th Cir. 1994) (noting that *ex parte* contact with juror without counsel

or defendant is presumptively prejudicial).  Nevertheless, the mere occurrence of an

*ex parte* communication between a judge and a jury does not constitute a *per se*

deprivation of a constitutional right.  *United States v. Gagnon*, 470 U.S. 522 , 526-29

(1985); *Rushen v. Spain*, 464 U.S. 114, 117-26 (1983).

Where error occurs in this regard, the error is subject to a harmless error

analysis.  *Rushen*, 464 U.S. at 120 (1983).  In addition, this Court defers to the factual

findings of the state courts regarding this issue.  *See Crease v. McKune*, 189 F.3d

1188, 1193-94 (10th Cir. 1999).  Here, the CCA determined that while there was error, it

was not prejudicial and, therefore, harmless.  *Tyler III*, No. 05CA2260, slip op. at 15.

Under the harmless error standard, the Court "will reverse a resulting conviction only if

the court's error was not harmless –  that is, if it had a substantial influence on the

outcome or leaves one in grave doubt as to whether it had such effect."  *United States*

22

*v. Roach*, 582 F.3d 1192, 1207 (10th Cir. 2010) (citation omitted).  As is clear from the

CCA's discussion of the trial court's interaction with the jury in this case, whether

Applicant's lack of presence was harmless depends on the nature of the trial court's

*ex parte* interaction with the jury.

Considering the relevant facts and law, this Court agrees with the CCA that the

trial court's error in addressing the jury outside of Applicant's presence was harmless

beyond a reasonable doubt.[7]  The trial court did not provide a supplemental definition

in relation to the jury's question, nor did the trial court actually address the question.

Although the trial court communicated with the jury outside the presence of Applicant,

the Court agrees that the trial court's reminder to the jury to review the instructions was

not prejudicial and was, in fact, harmless.  Therefore, the trial court's brief interaction

with the jury did not violate Applicant's right to due process or deny him a fair trial.  *See,*

*e.g.*, *Santiago*, 977 F.2d at 522-23 (holding that brief *ex parte* discussion between court

and jury was not fundamentally unfair to implicate constitutional protection).  In the

absence of a violation of a federal right, or any unreasonable application of the facts by

the state courts, habeas corpus relief is not available.  Accordingly, Claim 5 is denied.

---

[7] The state court record does not contain a transcript evidencing the exchange between the trial court and jury.  However, Applicant does not take issue with the CCA's or Respondents' description of the relevant events.  Although the record is incomplete, the Court "is not required to examine transcripts before disposing of a claim where a habeas petitioner's arguments are 'readily susceptible to resolution without resort to the transcript.'" *Flum v. McKee*, No. Civ. 04-CV-72671, 2005 WL 2319006, at *11 (E.D. Mich. Sept. 2, 2005) (unpublished decision) (quoting *Love v. Butler*, 952 F.2d 10, 15 (1st Cir. 1991)).  A state court record, albeit an incomplete one, is adequate if it provides "the district court with sufficient information to determine" the issue. *Cole v. New Mexico*, 58 Fed. Appx. 825, 828 (10th Cir. Feb. 6, 2003) (unpublished decision). Here, given Applicant's failure to dispute the CCA's or Respondents' version of the events, the Court finds that Applicant's arguments are "readily susceptible to resolution without resort to the transcript." *Love*, 952 F.2d at 15.

**E.      ERRONEOUS JURY INSTRUCTIONS (CLAIMS 6, 7, 8, 18 AND 21)**

     1.      Defaulted Jury Instruction Claims (Claims 7 and 8)

Applicant contends that he was denied a fair trial when the trial court erroneously instructed the jury regarding eyewitness testimony and the definition of other acts. *Application* [#6] at 19-20.  Respondents argue that Applicant failed to adequately raise either challenge in state court and, therefore, the claims are now procedurally defaulted. Specifically, Respondents note that because Applicant failed to bring either challenge on direct appeal, he was barred from pursuing it for the first time in his postconviction relief proceedings.  *Answer Brief* [#19] at 26.  As such, the CCA refused to consider the merits of Applicant's jury instruction challenges relating to eyewitness testimony or other acts on appeal from his request for postconviction relief.  *See Tyler III*, No. 05CA2260, slip op. at 5-6.

Under these circumstances, the Court agrees that Applicant has procedurally defaulted these claims.  As noted above, Applicant did not file a traverse or address whether the procedural default of these claims should be excused.  Therefore, Applicant has provided no basis for the Court to review either procedurally defaulted claim.  Nor can the Court independently discern any basis for reviewing these claims at first blush. This is particularly true here, where although Applicant raised an ineffective assistance of counsel claim regarding his appellate counsel's failure to pursue certain claims on direct appeal against his wishes, he did not argue that counsel should have, but failed to, pursue these particular claims on direct appeal.  *See, e.g., Tyler III*, No. 05CA2260, slip op. at 23.   Therefore, the record does not reveal any cause for Applicant's failure to

timely pursue either claim in state court, or any prejudice that may have resulted.[8]  *See*

*Coleman*, 501 U.S. at 750.  Accordingly, Claims 7 & 8 are denied.

    2.    <u>Remaining Jury Instruction Claims</u>

    Applicant contends that the trial court erred when it refused to instruct the jury as

to the meaning of the term "possession" (Claim 6).  *Application* [#6] at 19.  Applicant

raised this challenge on direct appeal.  *See Tyler I*, No. 99CA0849, slip op. at 12-13.

Applicant also contends that the trial court submitted erroneous attempted first degree

murder and burden of proof instructions (Claims 18 & 21).  *Id.* at 26, 28.  Applicant

raised these challenges in this first postconviction appeal.  *Tyler II*, No. 03CA1516, slip

op. at 2-3.

    "Errors in jury instructions in a state criminal trial are not reviewable in federal

habeas corpus proceedings, 'unless they are so fundamentally unfair as to deprive

petitioner of a fair trial and to due process of law.'"  *Nguyen v. Reynolds*, 131 F.3d 1340,

1357 (10th Cir. 1997) (citations omitted).  To obtain relief, a habeas corpus  application

must demonstrate that the erroneous instruction "by itself so infected the entire trial that

the resulting conviction violates due process."  *Henderson v. Kibble*, 431 U.S. 145, 154

(1977).

    Applicant is not entitled to habeas corpus relief on Claim 6.  Although no

definition of possession was provided to the jury, all that is required is that "the State

must prove every element of the offense" and that the instruction "give effect to that

requirement."  *Middleton v. McNeil*, 541 U.S. 433, 437 (2004).  Even where a term

---

    [8] *See also supra* note 3.

relates to an element of the offense, there is no federal requirement that the jury be provided definitions for every relevant term.  In particular, where a term is easily understood by jurors of common intelligence, no special definition is required.  *See, e.g.*, *United States v. Fredette*, 315 F.3d 1235, 1242 (10th Cir. 2003) (no materiality definition needed to be provided where it was clear that term was subject to how a "person of ordinary prudence and comprehension" would define it).   Here, as the CCA noted, the term "possession" was not an element of the offense of attempted murder. *See Tyler I*, No. 99CA849, slip op. at 12-13.  Arguably, the claim fails on this basis alone.  Moreover, although the term "possession" related to Applicant's defense that he did not possess a gun and, therefore, could not have shot the victim, the Court agrees with the CCA that "possession" is a commonly understood term.  *See id.* at 13. Accordingly, the Court finds that the absence of a definition did not deprive Applicant of a fair trial.

Applicant is not entitled to habeas corpus relief on Claim 18.  Although Applicant argues that the definition for attempted first degree murder was incorrect because it omitted the "after deliberation" element, as the CCA noted, Applicant was not convicted for the offense to which this instruction relates.  *See Tyler II*, No. 03CA1516, slip op. at 2-3.  Rather, Applicant was convicted of attempted second degree murder which does not contain an after deliberation element.  *See id.* at 3; *see also Tyler III*, No. 05CA2260, slip op. at 16.  Ordinarily, a trial court's failure to submit to the jury an element of the criminal offense is subject to harmless error review.  *Neder v. United States*, 527 U.S. 1, 8 (1999).  However, as is the case here, where Applicant failed to object to the instruction at the time it was given, the Court's review is limited to plain

26

error.  *Hunter v. New Mexico*, 916 F.2d 595, 598 (10th Cir. 1990).  Under the plain error

standard, Applicant is entitled to relief only where he is able to demonstrate that the

error had "a substantial and injurious effect in determining the jury's verdict."  *See*

*Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993) (citation omitted).  Even assuming

that the instruction at issue in this case was erroneous, Applicant has failed to articulate

how such an error had a substantial or injurious impact on the jury's verdict.  Because

Applicant was not convicted for the offense to which the alleged erroneous jury

instruction pertained, the Court finds that the alleged error did not deprive him of a fair

trial.

Applicant is not entitled to habeas corpus relief on Claim 21.  Applicant argues

that rather than instructing the jury that the State must prove "each" element beyond a

reasonable doubt, the jury should have been instructed that if the State "failed to prove

one or more elements" beyond a reasonable doubt then it has not met its burden.

*Application* [#6] at 28.  The CCA held that this challenge did not rise to the level of a

constitutional error and summarily rejected it.  *Tyler II*, No. 03CA1516, slip op. at 3.

The Court finds that there is no appreciable difference between the instruction given

and Applicant's suggested language.  Either instruction has the capability of alerting the

jury that (1) the State has the burden of proof as to each element and (2) the failure to

prove even one element must result in acquittal.  Given the fact that no error occurred

here, Applicant has failed to show that the instruction deprived him of a fair trial.  In the

absence of a violation of a federal right, or any unreasonable application of the facts by

the state courts, habeas corpus relief is not available.  Accordingly, Claims 6, 18 & 21

are denied.

**F.     RIGHT TO COUNSEL (CLAIMS 9 AND 15)**

1.     Preliminary Hearing Counsel (Claim 9)

Applicant contends that he was denied his right to counsel at his preliminary

hearing.  *Application* [#6] at 20.  Respondents argue that Applicant failed to adequately

raise this challenge in state court and, therefore, the claim is now procedurally

defaulted.  Specifically, Respondents argued that, because Applicant failed to bring

this challenge on direct appeal, he was barred from pursuing it for the first time in his

postconviction relief proceedings.  *Answer Brief* [#19] at 28.  As such, the CCA refused

to consider this challenge on appeal from Applicant's request for postconviction relief.

*See Tyler III*, No. 05CA2260, slip op. at 5-6.

Under these circumstances, this Court agrees that Applicant has procedurally

defaulted this claim.  As noted above, Applicant did not file a traverse or address

whether the procedural default of this claim should be excused.  Therefore, Applicant

has provided no basis for the Court to review the procedurally defaulted claim.  Nor can

the Court independently discern any basis for reviewing the claim at first blush.  This is

particularly true here, where although Applicant raised an ineffective assistance of

counsel claim regarding his appellate counsel's failure to pursue certain claims on direct

appeal against his wishes, he did not argue that counsel should have, but failed to,

pursue this particular claim on direct appeal.  *See, e.g.*, *Tyler III*, No. 05CA2260, slip op.

at 23.  Accordingly, the record does not reveal any cause for Applicant's failure to

timely pursue this claim in state court, or any prejudice that may have resulted.[9]  *See Coleman*, 501 U.S. at 750.  Accordingly, Claim 9 is denied.

    2.   <u>Trial Counsel (Claim 15)</u>

Applicant contends that he was denied his right to counsel when the trial court failed to replace attorney Dennis Sladek or "'inquire' of [Applicant] whether he would prefer to retain representation of counsel if a 'new and competent Attorney' were appointed."  *Application* [#6] at 24.  This claim stands in stark contrast to the fact that Applicant requested, and was granted the opportunity, to proceed in his own defense.  *See Record* vol. October 2, 1998 at 4.  The Court interprets Applicant's argument to be that prior to Applicant being permitted to proceed *pro se* (as he had requested), the trial court should have determined whether Applicant was receiving adequate assistance from Mr. Sladek and considered whether, rather than permitting Applicant to proceed *pro se*, a new attorney should have been appointed.  Applicant raised a variation of this claim on direct appeal.  The CCA noted that a criminal defendant has right to represent himself at trial and that the trial court's determination that the defendant waived the right to counsel will be upheld if the record establishes that the defendant knowingly waived his right.  *Tyler I*, No. 99CA0849, slip op. at 7.

Contrary to Applicant's assertion here, there is no independent constitutional right to have the trial court first determine whether substitute counsel should be appointed prior to allowing a defendant to proceed on his own after a sufficient inquiry is conducted.  If a criminal defendant requests to proceed on his own, and the trial court is

---

[9] *See also supra* note 3.

satisfied that he can do so, that is all the Constitution requires. *United States v. Mackovich*, 209 F.3d 1227, 1236 (10th Cir. 2000). Furthermore, Applicant's contention that he suffered constitutional error because the trial court did not first consider whether Applicant would benefit from substitute counsel is disingenuous. Applicant sought to proceed on his own and the trial court granted his request after substantial inquiry. *See Record* vol. October 2, 1998 at 4-52. Any error in not first determining whether Applicant was better off with substitute counsel was invited by Applicant. *See id.* at 7 (noting that because "Defendant is saying he doesn't want any attorney, . . . we may not find it necessary to inquire into whether [counsel is] doing a suitable job or not, because this is a different question"). Moreover, given the fact that Applicant had been unable to work with any of his prior attorneys, see *Record* vol. October 20, 1997 at 7, it was not unreasonable for the trial court to conclude that self representation, if warranted, was a better option than substitute counsel.

To the extent that Applicant's argument could be interpreted as an assertion that he did not knowingly and intelligently waive his right to counsel, the CCA noted that the trial court conducted a detailed inquiry of Applicant. *Tyler I*, No. 99CA0849, slip op. at 10. This inquiry included informing Applicant that he had a right to appointed counsel. *Record* vol. October 2, 1998 at 10-11. To the extent that Applicant contends here that the trial court failed to advise him of this fact, it is not supported by the record. The trial court also informed Applicant that "[y]ou have to understand that if we do this you are committed to do this yourself." *Id.* at 16. Applicant noted that he understood. The trial court also questioned why Applicant felt that he could represent himself, and Applicant replied that he had essentially been representing himself for some time and that he had

30

"done a terrific job." *Id.* at 17.  Applicant also informed the trial court that he had

familiarity with the rules of evidence and criminal procedure, *id.* at 19-20, and that he

would be willing to listen to the advice of advisory counsel, *id.* at 21.  The trial court also

asked Applicant whether he understood that representing himself was "unwise" and

"very risky," and Applicant replied that he understood.  *Id.* at 24.  The trial court also

asked Applicant:  "Do you understand that if you represent yourself, you can't change

your mind if you get convicted and say, 'I should have a new trial, because I shouldn't

have represented myself?"  Applicant noted that he understood.  *Id.*  He also noted that

he understood that he couldn't blame his advisory counsel for his own mistakes.  *Id.* at

25.  The trial court specifically told Applicant, "[y]ou can't have it both ways.  If you are

going to represent yourself you have got to understand the limitations, and you have got

to take responsibility for it all," to which Applicant replied, "I believe that I would have no

second guesses about my representation."  *Id.*  at 30-31.  The trial court also reminded

Applicant that he had two choices, either to have an attorney or to represent himself,

"[a]nd you can't play one against the other.  If you[] choose to represent yourself, you

understand you are not getting an attorney, except an advisory attorney, right?"

Applicant replied that he understood.  *Id.* at 32-33.  The trial court also asked Applicant

why he wanted to represent himself and Applicant responded, "I am very familiar with

my criminal case.  When the attorneys have it, when I suggest issues . . . to my lawyers

I don't get the result . . . .  I have developed more motivation into establishing a defense

that will be appropriate for myself."  *Id.*  at 45-46.  Finally, the trial court asked Applicant:

"Do you wish, specifically, to give up your right to have an attorney represent you, and

do you assert your right to represent yourself in this case?"  Applicant responded, "Yes,

Your Honor.  Absolutely.  Very absolutely."  *Id.* at 48.

At the conclusion of the thorough and detailed hearing, the trial court found that

Applicant knowingly, voluntarily and intelligently waived his right to counsel.  *Id.* at 48-

52.  The CCA agreed.  *Tyler I*, No. 99CA0849, slip op. at 8.  Upon review of the record,

this Court finds that Applicant "clearly and unequivocally" asserted his desire to

represent himself.  *See Mackovich*, 209 F.3d at 1236 (citing *United States v. Floyd*, 81

F.3d 1517, 1527 (10th Cir. 1996)).  His assertion was timely in that it came prior to trial

and during the hearing held for the purpose of determining Applicant's intentions.  *See*

*id.* (citing *United States v. McKinely*, 58 F.3d 1475, 1480 (10th Cir. 1995)).  Finally, his

assertion was made "knowingly and intelligently" after a "thorough and comprehensive

formal inquiry."  *See id.* (citing *United States v. Boigegrain*, 155 F.3d 1181, (10th Cir.

1998); *United States v. Willie*, 941 F.2d 1384, 1388 (10th Cir. 1991)).  Applicant's

argument that the trial court should have appointed substitute counsel, regardless

of Applicant's unequivocal request to represent himself, and regardless of lengthy

reminders that he could not blame the court or advisory counsel if he was convicted, is

not well taken on this record.  Applicant should not be heard to complain now, after

conviction, that the trial court erred in granting his request.  Given that Applicant's

request to represent himself was satisfactorily investigated and granted, he was not

unconstitutionally denied counsel.  In the absence of a violation of a federal right, or any

unreasonable application of the facts by the state courts, habeas corpus relief is not

available.  Accordingly, Claim 15 is denied.

**G.    ERRONEOUS EVIDENTIARY RULING CLAIMS (CLAIMS 10, 11, 13 AND 14)**

　　1.    Defaulted Evidentiary Ruling Claims (Claims 10, 11 and 13)

Applicant contends that he was denied a fair trial when the trial court admitted

a bullet and hearsay testimony and excluded surrebuttal testimony. *Application* [#6] at

21-22.  Respondents argue that Applicant failed to adequately raise these challenges

in state court and, therefore, the claims are now procedurally defaulted.  Specifically,

Respondents note that because Applicant failed to bring these challenges on direct

appeal, he was barred from pursuing them for the first time in his postconviction relief

proceedings. *Answer Brief* [#19] at 29.  As such, the CCA refused to consider the

merits of these specific evidentiary challenges on appeal from his request for

postconviction relief. *See Tyler III*, No. 05CA2260, slip op. at 5-6.

Under these circumstances, this Court agrees that Applicant has procedurally

defaulted these claims.  As noted above, Applicant did not file a traverse or address

whether the procedural default of these claims should be excused.  Therefore, Applicant

has provided no basis for the Court to review any procedurally defaulted claim.  Nor can

the Court independently discern any basis for reviewing these claims at first blush.  This

is particularly true here, where although Applicant raised an ineffective assistance of

counsel claim regarding his appellate counsel's failure to pursue certain claims on direct

appeal against his wishes, he did not argue that counsel should have, but failed to,

pursue these particular claims on direct appeal. *See, e.g.*, *Tyler III*, No. 05CA2260, slip

op. at 23.  Accordingly, the record does not reveal any cause for Applicant's failure to

timely pursue these claims in state court, or any prejudice that may have resulted.[10]

*See Coleman*, 501 U.S. at 750.  Accordingly, Claims 10, 11 & 13 are denied.[11]

    2.   Remaining Evidentiary Ruling Claim (Claim 14)

Applicant contends that the trial court erred in refusing to allow him to present

testimony in support of his theory that there was a government conspiracy to put him in

jail.  *Application* [#6] at 23.  Specifically, Applicant argued to the CCA that he should

have been permitted to testify that during trial, "several state employees, including

members of the district attorney's office, had openly discussed [his] case in the court

hallway, and had degraded [him] in front of another witness by calling him an 'animal'

and 'crazy for firing six attorneys.'"  *Tyler I*, No. 99CA849, slip op. at 9.  Applicant

contends that this testimony not only supported his conspiracy theory, but also

established a violation of the trial court's sequestration order.  *Application* [#6] at 23.

On direct appeal, the CCA concluded that "the trial court acted within its

discretion and did not violate defendant's due process rights by preventing defendant

from testifying about the hallway statements."  *Tyler I*, No. 99CA0849, slip op. at 10.

The CCA held that the conduct, if it occurred, did not prejudice Applicant and that, in

any event, the testimony would have been irrelevant.  *Id.*

Absent a showing that the denial of evidence was "so grossly prejudicial that it

fatally infected the trial and denied the fundamental fairness that is the essence of due

---

[10] *See also supra* note 3.

[11] In any event, as will be addressed below, "federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence" absent extraordinary unfairness. *Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir. 2001).

process," federal habeas relief is not available. *Wilson v. Sirmons*, 536 F.3d 1064, 1101 (10th Cir. 2008). As a preliminary matter, the witness who allegedly heard the statements in the hallway was Everett Young, the same witness who retracted his identification of Applicant on the witness stand. Given Mr. Young's testimony, it is improbable that these alleged hallway statements (or, for that matter, any alleged violation of the sequestration order) negatively impacted Applicant at trial. Further, the Court notes that the admission of this testimony may have had the opposite effect of what Applicant intended, e.g., it may have encouraged the jury to view Applicant as foolhardy for proceeding *pro se*. Further, the Court finds that the hallway statements do not sufficiently support Applicant's conspiracy theory defense such that their exclusion had the capacity to fatally infect his trial. *See id.* In the absence of a violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available. Accordingly, Claim 14 is denied.

## H.    FAILURE TO ISSUE WRIT FOR TESTIMONY (CLAIM 12)

Applicant contends that he was denied a fair trial when the trial court refused to issue a writ to obtain the testimony of two inmates, Warren Nelson and Dorothy Thurman. *Application* [#6] at 22. However, the witnesses' failure to appear came about as a result of Applicant's failure to issue a subpoena for their testimony. *See Tyler I*, No. 99CA0849, slip op. at 11. The trial court had previously explained this procedure to Applicant, and he did not comply. *Id.*; *see also Record* vol. October 2, 1998 at 22-23. Applicant contends that the witnesses should nevertheless have been produced. Specifically, he argues that the testimony of inmate Thurman, Applicant's mother, was necessary to rebut a witness' testimony that he could identify Applicant as the shooter

based on his memory of what Applicant looked like from twenty years earlier.
*Application* [#6] at 22.  However, on direct appeal, the CCA noted that the rebuttal
testimony was unnecessary because the witness (Everett Young) retracted his
identification of Applicant.  *Tyler I*, No. 99CA0849, slip op. at 11.  Applicant also
contends that the testimony of inmate Nelson, the cellmate of the victim, was necessary
to show that the victim's in-court statements were inconsistent with his out-of-court
statements.  *Application* [#6] at 22.  In regard to this testimony, the CCA noted that the
cellmate's testimony would have been cumulative of another witness' testimony
regarding the same matter.  *Tyler I*, No. 99CA0849, slip op. at 11.

　　　The CCA concluded that the cumulative and/or unnecessary nature of the
testimony excused the trial court from issuing a writ for these incarcerated witnesses to
appear.  *Tyler I*, No. 99CA849, slip op. at 11.  In any event, the CCA noted that even
if the trial court committed error, such error was harmless.  *Id.*  The Court agrees.
Although neither party has directed this Court to relevant federal case law regarding
the trial court's conduct here, the Court notes that a review of the record reveals that
Applicant was not prejudiced by lack of testimony from these witnesses.  The testimony
Applicant would have sought from the inmate witnesses was on the one hand,
unnecessary, and on the other hand, cumulative.  Further, as Applicant represented
himself at trial, it was his responsibility to ensure his witness' participation by following
the procedures explained to him by the judge prior to trial.  *See Record* vol. October 2,
1998 at 22-23.  In the absence of a violation of federal law or the clear misapplication of
the facts by the state courts, Applicant is not entitled to relief.  Accordingly, Claim 12 is
denied.

I.      **PROSECUTORIAL MISCONDUCT IN CLOSING ARGUMENT (CLAIM 16)**

Applicant contends that an isolated remark made by the prosecutor during

closing argument resulted in constitutional error.[12]  *Application* [#6] at 24-25.

Specifically, at trial, the prosecution was prevented from eliciting testimony that an eye

witness, Everett Young, had changed his testimony because he had been threatened

and shot at prior to trial.  *Record* vol. October 28, 1998 at 62-64.  However, in the

closing argument, while not specifically referencing the fact that bullets had been fired at

Mr. Young, the prosecutor commented on Mr. Young's changed testimony and

intimated that he had done so out of fear of Applicant.  *Id.* vol. Nov. 6, 1998 at 231-236.

Upon review of the record, the Court notes that Applicant did not object to this portion of

the closing argument and did not seek a curative instruction.

This claim is appropriately addressed as a due process violation.  *See Darden v.

Wainwright*, 477 U.S. 168, 181 (1986); *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir.

2002).  To this end, the propriety of the prosecutor's comment must be taken in context

of the entire trial.  *Smallwood v. Gibson*, 191 F.3d 1257, 1275-76 (10th Cir. 1999).

> To view the prosecutor's statements in context, we look first at the
> strength of the evidence against defendant and decide whether the
> prosecutor's statements plausibly "could have tipped the scales in favor of
> the prosecution." . . .  We also ascertain whether the curative instructions
> by the trial judge, if given, might have mitigated the effect on the jury of the

---

[12] Although Respondents concede that Applicant exhausted this claim in postconviction
relief, see *Answer Brief* [#19] at 15-17, the CCA refused to consider the claim because it was
not raised on direct appeal and/or did not implicate a constitutional error.  *See Tyler III*, No.
05CA2260, slip op. at 8.  Applicant's procedural default of this claim technically amounts to a
failure to exhaust.  *See Coleman*, 501 U.S. at 750.  Nevertheless, this Court may resolve the
claim "notwithstanding the failure of the applicant to exhaust . . . ."  28 U.S.C. § 2254(b)(2).
Although the Court does not exercise its discretion to review Applicant's other procedurally
defaulted claims, the Court does choose to resolve this claim on its merits given that
Respondents did not raise procedural default as a basis for dismissal in their Answer Brief.

> improper statements . . . .  Ultimately, we "must consider the probable
> effect the prosecutor's [statements] would have on the jury's ability to
> judge the evidence fairly."

*Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994) (citation omitted).  "Generally, a

prosecutor's improper remarks require reversal of a state conviction only if the remarks

'so infested the trial with unfairness as to make the resulting conviction a denial of due

process.'"  *Mullin*, 311 F.3d at 1013 (quoting *Donnell v. DeChristoforo*, 416 U.S. 637,

643 (1974)).  "Prosecutorial misconduct does not warrant federal habeas relief unless

the conduct complained of is so egregious as to render the entire proceedings against

the defendant fundamentally unfair."  *Smallwood*, 191 F.3d at 1275.

The Court finds that Applicant has failed to assert conduct that rendered the

entire trial fundamentally unfair or "shocking to the universal sense of justice."  *See*

*United States v. Russell*, 411 U.S. 423, 432 (1973) (citation omitted).  Moreover, any

prejudice that could have resulted from the prosecutor's comment is sufficiently

undercut by the fact that Applicant ultimately did not object to it in the closing argument.

*See Cummings v. Evans*, 161 F.3d 610, 618 (10th Cir. 1998).  Finally, given the

existence of substantial evidence of Applicant's guilt, the Court finds that the

prosecutor's comments did not have the capability to impact the fairness of Applicant's

trial.  In the absence of a violation of a federal right, or any unreasonable application of

the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claim

16 is denied.

## J.    INCONSISTENT JURY VERDICT (CLAIMS 19 AND 20)

Applicant contends that, because the jury instruction for attempted first degree

murder did not include the "after deliberation" element, and Applicant was acquitted of

this offense, the jury could not also have reasonably found him guilty of attempted

second degree murder (Claim 19).  *Application* [#6] at 26-27.  Applicant raised this claim

in his first postconviction appeal.  *Tyler II*, No. 03CA1516, slip op. at 2-3.  Applicant also

contends that his convictions for attempted second degree murder and second degree

assault with a deadly weapon are inconsistent (Claim 20).  *Application* [#6] at 27.

Applicant raised this claim in his second postconviction appeal.  *Tyler III*, No.

05CA2260, slip op. at 15-18.

> As a preliminary matter,
>
> The elements of attempted first degree murder are that the defendant
> (1) after deliberation (2) with the intent to cause the death of a person
> other than himself, (3) engaged in conduct constituting a substantial step
> toward causing the death of that person or of another person.  The
> elements of attempted second degree murder are that the defendant
> (1) knowingly (2) engaged in conduct constituting a substantial step
> toward causing the death of another person.  The elements of second
> degree assault with a deadly weapon are that the defendant (1) with
> intent to cause bodily injury to another person, (2) caused such injury to
> any person, (3) by means of a deadly weapon.

*Id.* at 16 (citing Colo. Rev. Stat. §§ 18-2-101, 18-3-102(1)(a), 18-3-103 & 18-3-

203(1)(b)).

The CCA rejected both claims of inconsistency.  In *Tyler II*, the CCA refused to

consider the merits of the allegation because the claim did not raise a fundamental

constitutional error.  *Tyler II*, No. 03CA1516, slip op. at 3.  In *Tyler III*, the CCA held that

the verdicts were not inconsistent because "the jury could have found the evidence did

not establish the element[] of . . . specific intent to kill, but the evidence was sufficient to

prove the elements of specific intent to cause bodily injury, and general intent to kill."

*Tyler III*, No. 05CA2260, slip op. at 17.

There is no constitutional requirement that Applicant receive consistent verdicts. *Standefer v. United States*, 447 U.S. 10, 25 (1980).  "While symmetry of results may be intellectually satisfying, it is not required." *Id.*  Even assuming that Applicant has articulated credible inconsistencies between his acquittal for attempted first degree murder and his conviction of attempted second degree murder and second degree assault with a deadly weapon, the fact that the jury "reach[ed] different conclusions as to the same material does not mean that constitutional rights were abridged." *Hamling v. United States*, 418 U.S. 87, 101 (1974) (citation omitted).  Accordingly, in the absence of a federal constitutional violation, relief is only available where Applicant can show that his conviction "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  As noted above, the CCA found that it was not unreasonable for the jury to conclude that Applicant did not have a specific intent to kill, but did have a specific intent to harm and only a general intent to kill.  From the Court's review of the record and the evidence presented, this is a reasonable determination and, therefore, is not subject to reversal.[13]  In the absence of a violation of a federal

---

[13] Although arguably unnecessary, the Court addresses the merits of Applicant's contention that, as instructed, Applicant could not have been acquitted of attempted first degree murder but convicted of attempted second degree murder.  Reviewing the jury instructions at issue, the Court finds that Applicant's argument is based on an unpersuasive premise, namely that the jury was not appropriately instructed that first degree murder involves an "after deliberation" element.  While the attempted first degree murder instruction admittedly excluded this requirement, the instruction that immediately followed the attempted first degree murder instruction clearly articulated that issues of first degree murder involve a determination that the conduct was committed "after deliberation." *Record* [Docket No. 286-87].  As noted in resolution of Claim 18, because the jury apparently rejected the notion that Applicant deliberated prior to his conduct and thus was not guilty of attempted first degree murder, he suffered no error from the somewhat confusing nature of the instruction related to attempted first degree murder.

right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claims 19 & 20 are denied.

## K.    INSUFFICIENT EVIDENCE FOR CONVICTION (CLAIM 22)

Applicant contends that the evidence adduced at trial was insufficient to convict him of attempted second degree murder.  *Applicant* [#6] at 28.  Specifically, Applicant contends that there was insufficient evidence that he was present at the scene, that he was engaged in a drug transaction, that he was in possession of a firearm or that he used the firearm.  *Id.*  Applicant raised this challenge on direct appeal.  *See Tyler I*, No. 99CA0849, slip op. at 14-15.  The CCA noted that "[a]ttempted second degree murder is a general intent crime which requires the prosecution to prove that defendant, acting with an awareness that death is practically certain to result, took a substantial step toward causing the death of another."  *Id.* at 14.  After reviewing the evidence, the CCA found that the evidence adduced at trial that Applicant "twice struck the victim in the face and then fired several shots at the victim at close range" sufficiently satisfied the elements of the offense.  *Id.* at 14-15.

"Sufficiency of the evidence is a mixed question of law and fact."  *Maynard v. Boone*, 468 F.3d 665, 673 (10th Cir. 2006). The reviewing court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  To this end, the habeas corpus court must determine whether the facts were viewed correctly and the law was properly applied to the facts.  *Maynard*, 468 F.3d at 673.  As noted earlier, the determination of a factual issue by a state court is presumed to be correct, and the Applicant has the

burden of rebutting this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

As a preliminary matter, to the extent that Applicant contends that there was insufficient evidence that he was engaged in a drug transaction, this conduct does not sufficiently relate to any of the elements of proof that the jury was required to find. Further, although whether Applicant was present at the scene and whether he possessed or used a weapon are relevant to the question of whether he committed attempted second degree murder, they are not specific elements of the offense. Rather, the jury was only tasked with finding beyond a reasonable doubt that Applicant acted with awareness that certain conduct could cause death and that he took a substantial step toward that end.

As noted above, the CCA's determination that the evidence showed that Applicant was striking the victim in the head and that he fired several shots at him at close range is entitled to a presumption of correctness.  *See Sumner*, 455 U.S. at 591-93.  Moreover, Applicant has offered no clear and convincing evidence in contradiction to this factual finding.  Further, and upon the Court's independent review of the record, the Court finds that the conduct attributed to Applicant meets the legal requirements of acting with awareness that death could occur and taking steps toward that result. Because the facts of this case could lead a reasonable juror to conclude that the elements of attempted second degree murder were proven beyond a reasonable doubt, Applicant cannot show that his conviction was based upon insufficient evidence.  In the absence of a violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claim 22 is denied.

L.      **ERRONEOUS USE OF PROSECUTION WITNESS (CLAIM 24)**

Applicant contends that he was denied a fair trial when the prosecutor called a witness to testify knowing that the witness would invoke his Fifth Amendment right not to incriminate himself.   *Application* [#6] at 29.   As a preliminary matter, the trial court questioned the witness, Everett Young, about what he told the prosecutor in advance of his testimony.   In response, Mr. Young noted that he told the prosecutor that he "would have nothing to say."   *Record* vol. October 27, 1998 at 53.   The prosecutor also unequivocally stated "that there was no mention of . . . the Fifth Amendment."   *Id.* at 54. The trial court found that the prosecutor did not know that the witness would invoke his Fifth Amendment right; he only knew that the witness was reluctant to testify.   *Id.* vol. October 28, 1998 at 132.   This factual finding is entitled to a presumption of correctness and nothing provided by Plaintiff overcomes that presumption here.   *See Sumner*, 455 U.S. at 591-93.

There are two, alternate standards employed for resolving this claim.   First, absent bad faith by the prosecutor, calling a witness who invokes his Fifth Amendment right does not implicate any constitutional concerns.   *See Namet v. United States*, 373 U.S. 179, 186-87 (1963).   Upon review of the record, the Court finds that there is no evidence of bad faith, and Applicant has offered no credible argument otherwise. Second, absent prejudice to Applicant, calling a witness who invokes his Fifth Amendment right does not necessarily implicate any constitutional concerns.   *See id.* For example, if the prosecution uses the witness' invocation as an argument for the jury to draw an inference of guilt, Applicant may have been prejudiced.   In this case, however, a review of the record does not reveal that the prosecution impermissibly used

43

the invocation against Applicant.  In fact, as the CCA noted, the trial court gave a curative instruction.  *See Tyler III*, No. 05CA2260, slip op. at 10.  As such, under either theory, the Court finds that Applicant has not suffered a constitutional violation.  In the absence of a violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claim 24 is denied.

## M.   SLEEPING JUROR (CLAIM 26)

Applicant contends that he was denied a fair trial when a juror appeared to fall asleep.  *Application* [#6] at 30.  On the second day of the trial, the trial judge noticed that a juror was shifting uncomfortably in her seat and appeared to briefly have her eyes closed.  *Record* vol. October 23, 1998 at 237-39.  The trial judge excused the jury, with the exception of the juror, to ask whether she was able to continue at the pace of the trial.  She indicated that she was doing her best but had several physical ailments that made sitting for long periods of time uncomfortable.  She also admitted that she may have dozed off on one occasion, but did not specify when that might have been.  *Id.* at 238.  She promised to try to remain alert for the rest of the trial.  *Id.* at 237-38.  A review of the record reveals that there were fourteen jurors sitting for the trial and that at no other time did a juror fall asleep.

Respondents argue that "the record shows, at most, a very minor lapse of attention."  *Answer Brief* [#19] at 41.  Addressing this claim during Applicant's second postconviction relief appeal, the CCA agreed and noted that there was no evidence that this one minor lapse involved consequential parts of the trial, like closing arguments, or prejudiced Applicant.  *Tyler III*, No. 05CA2260, slip op. at 13.

The Court considers whether the fact that a juror may have fallen asleep during trial violated Applicant's right to due process.  *United States v. Springfield*, 829 F.2d 860, 864 (9th Cir. 1987).  To this end, not every instance of juror misconduct gives rise to a constitutional concern.  *United States v. Hendrix*, 549 F.2d 1225, 1229 (9th Cir. 1977).  "[I]n the habeas corpus context, a federal court may grant relief only where the alleged misconduct 'had substantial and injurious effect or influence in determining the jury's verdict.'"  *Vigil v. Zavaras*, 298 F.3d 935, 940 (10th Cir. 2002) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Here, the Court notes that the trial judge immediately addressed the issue with the juror and attempted to discern the extent of the juror's lapse.  "The trial court is in the best position to assess a juror's misconduct, including sleeping during the presentation of testimony."  *Champ v. Zavaras*, No. 08-cv-00859, 2010 WL 2543571, at *14 (D. Colo. June 21, 2010) (unpublished decision) (citing *Wainwright v. Witt*, 469 U.S. 412, 424-26 (1985)).  The trial judge appeared to be satisfied that the juror's lapse did not impact a substantial portion of the testimony from the day and took no further action.  After conducting an independent review of the record, the Court agrees.  Applicant's trial lasted ten days.  There appears to be only one instance where a juror may have fallen asleep, and it did not occur during closing argument or during presentation of critical witnesses.  The trial judge quickly addressed the problem.  Therefore, on this record, there is no evidence that Applicant was deprived of a fair trial.  *See, e.g.*, *Inman v. Kansas*, No. 04-3503, 2005 WL 1519109, at *3 (10th Cir. June 28, 2005) (unpublished decision) (rejecting contention that juror nodding off once during three day trial had capacity to render the trial unfair); *Champ*, 2010 WL 2543571, at *14

45

(rejecting contention that sleeping juror prejudiced the applicant).  In the absence of a violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claim 26 is denied.

**N.    TAINTED IN-COURT IDENTIFICATION (CLAIM 27)**

Applicant contends that the in-court identification of him by several witnesses was tainted by an impermissibly suggestive photographic lineup.  *Application* [#6] at 30-31.  Specifically, Applicant contends that counsel should have been present at the photographic lineup.  *Id.*  The CCA rejected the contention that the photographic lineup impacted any witness' trial testimony or prejudiced Applicant.  *Tyler III*, No. 05CA2260, slip op. at 9-10.

As a preliminary matter, there is no constitutional requirement to have counsel present at a photographic lineup.  *United States v. Ash*, 413 U.S. 300, 321-25 (1973). To the extent that the claim is based solely on this allegation, the claim must fail.  Even assuming that Applicant meant to raise a broader challenge that the photographic lineup was impermissibly suggestive, Applicant fails to provide specific allegations that the lineup was "so impermissively suggestive as to give rise to a very substantial likelihood of irreparable misidentification."  *Simmons v. United States*, 390 U.S. 377, 384 (1968). As noted earlier, the Court is "not required to fashion [Applicant's] argument for him where his allegations are merely conclusory in nature and without supporting factual averments."  *Fisher*, 38 F.3d at 1147.  In the absence of a clear violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, claim 27 is denied.

O.     **MOTION FOR NEW TRIAL (CLAIM 29)**

Applicant contends that his constitutional rights were violated when the trial court denied his motion for new trial and failed to conduct a hearing.  *Application* [#6] 31-32. As a preliminary matter, there is no constitutional requirement to hold a hearing prior to resolving a motion for new trial.  *See United States v. Sutton*, 767 F.2d 726, 729 (10th 1985).  As such, this portion of Applicant's claim is not cognizable here absent a clear showing that Applicant was prejudiced.  *See United States v. Prichard*, 781 F.2d 179, 183-84 (10th Cir. 1986); *see also Sutton*, 767 F.2d at 729 (noting that speculation or conclusory assertions are insufficient basis for demanding an evidentiary hearing).

To determine whether Applicant was prejudiced, it is necessary to consider the merits of Applicant's motion for new trial.  The CCA held that none of Applicant's arguments required a new trial.  *Tyler III*, No. 05CA2260, slip op. at 19.  Consequently, it held that no hearing was required.  *See id.*  The arguments for new trial raised by Applicant also form the basis for many of Applicant's independent claims asserted here. Because the Court finds that none of Applicant's independent claims raise a basis for federal habeas corpus relief, the Court agrees with the CCA that the trial court did not err in refusing to grant a new trial or conduct an evidentiary hearing.  Moreover, after conducting an independent review of the record, the Court finds that there was overwhelming evidence of guilt and the lack of any reversible error.  As such, no constitutional injury is implicated by this claim.  In the absence of a violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claim 29 is denied.

### P.   INSUFFICIENT EXPERT TESTING OF EVIDENCE (CLAIM 30)

Applicant vaguely contends that the prosecution performed multiple tests on ballistics evidence, including a bullet casing, which violated his constitutional rights. *Application* [#6] at 32.  In Applicant's second postconviction relief appeal, the CCA summarized that Applicant "does not claim the evidence was destroyed, only that it was tested multiple times."  *Tyler III*, No. 05CA2260, slip op. at 12.

Here, Respondents argue that regardless of whether the evidence was tested multiple times, "it is unclear how this procedure disadvantaged [Applicant].  Any irregularities in testing is [sic] a matter for cross-examination and did not violate any constitutional rights."  *Answer Brief* [#19] at 43.  The CCA was equally unconcerned about Applicant's allegation and noted that, assuming the evidence was tested on more than one occasion, there is no basis to question this procedure or to find that it violated any court order.  *Tyler III*, No. 05CA2260, slip op. at 12.  The Court agrees.  Applicant has failed to provide a valid constitutional basis for addressing his allegation.  Other than his conjecture that the testing methods prejudiced him, he has failed to specifically raise an injury that he suffered.  In the absence of a clear violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claim 30 is denied.

### Q.   COMPETENCY (CLAIMS 31 AND 32)

Applicant contends that the timing of the trial court's competency determination (Claim 31), coupled with the trial court's conclusion that Applicant was competent to proceed to trial (Claim 32), violated his constitutional rights.  *Application* [#6] at 32-33.  Specifically, Applicant contends that after testimony and reports from medical experts

48

were admitted at a hearing held on April 13, 1998, the trial court should have found him incompetent to proceed without further delay.  When the trial court ultimately reached its competency determination after a second hearing held on July 27, 1998, Applicant contends that the trial court erred in finding him competent.

The alleged timing error raised by Applicant appears to stem from state law, namely Colo. Rev. Stat. § 16-8-111, which requires that a final determination as to competency be made "at the conclusion of the [competency] hearing."  On direct appeal, the CCA held that any error resulting from the trial court's delay in determining competency after the April 13, 1998 hearing was justified and invited.  *Tyler I*, No. 99CA0849, slip op. at 1-4.  First, the delay was justified because the expert testimony was inconclusive and the experts agreed that further evaluation was necessary.  *Id.* at 3-4.  Second, the delay was invited because Applicant's counsel at that time also requested further evaluation.  *Id.* at 4.  Although Applicant contends that the timing issue is one of federal constitutional proportion, there is no federal right to a competency determination immediately at the conclusion of a competency hearing. Even if the state statute somehow confers an enforceable right, the Court agrees with the CCA's conclusion that the delay was necessary given the evidence presented at the April 13, 1998 hearing.  Because this claim does not implicate the deprivation of a federal right, or constitute an unreasonable determination based upon the Court's review of the facts in evidence, habeas relief is not warranted.

The remainder of Applicant's competency challenge centers on the trial court's ultimate determination that Applicant was competent to proceed to trial.  To reach its determination, the trial court relied, in part, on the testimony of a psychologist who

49

"extensively observed and interviewed [Applicant] between April and July 1998." *Id.* at

5.  Neither of the experts who had testified at the April 13, 1998 hearing were recalled to

offer their opinions and there is no record that they met with Applicant after their April

1998 testimony.  *See id.* at 5-6.  As noted above, the trial court found that the earlier

testimony was inconclusive and that employment of a new expert was necessary.  The

new expert testified that Applicant had a personality disorder that made cooperation

between himself and his attorneys difficult.  *Id.* at 5.  The expert also testified that

Applicant did not suffer from a serious mental disorder and was competent to proceed.

*Id.*  A review of the July 27, 1998 hearing transcript reveals that Applicant did not

challenge the expert's findings and, through his attorney, informed the trial court that he

believed that he was competent to proceed.  *Record* vol. July 27, 1998 at 11.

     The CCA held that the trial court was not required to rely on the April 1998 expert

testimony and that the July 1998 expert testimony supported the trial court's factual

determination that Applicant was competent to proceed.  *Id.* at 6.  The state courts'

factual findings are entitled to a presumption of correctness.  *See Sumner*, 455 U.S.

at 591-93.  Although Applicant cites to the April 1998 expert testimony as a basis to

overcome the presumption, the Court agrees that the testimony was inconclusive.

Further, the Court agrees that it was reasonable to expressly rely on the expert who

extensively observed Applicant from April 1998 to July 1998 in reaching a final decision

about Applicant's competence.  This is particularly true because Applicant did not

contest the new expert's findings and, through counsel, stated his desire to proceed

to trial.

Due process principles require that a criminal defendant have "sufficient present ability to consult with a lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Drope v. Missouri*, 420 U.S. 162, 172 (1975) (citation omitted). This determination is a question of fact and can only be overturned where the decision was clearly erroneous. *United States v. Wayt*, 24 Fed. Appx. 880, 882 (10th Cir. Nov. 27, 2001) (unpublished decision) (requiring that the reviewing court be left with the "definite and firm conviction that a mistake has been committed" (citation omitted)).

The most relevant evaluations of Applicant's "present" ability to understand and comprehend the proceedings came from the expert who observed Applicant from April 1998 to July 1998 and from Applicant's counsel. While the earlier experts expressed doubt about Applicant's competence, doubt about competence does not invalidate the trial court's determination that, after further evaluation, Applicant was competent. *See, e.g.*, *Mackovich*, 209 F.3d at 1233 (recognizing that disagreement among relevant observers does not preclude finding of competence and noting that counsel's opinion is relevant to the decision). Further, although Applicant was found to have a personality disorder, this fact "does not necessarily mean [that he was] incompetent to assist in his own defense." *Wayt*, 24 Fed. Appx. at 882 n.2 (citation omitted); *see also id.* at 883 (noting that a personality disorder may not rise to the level of a serious mental disorder and that a diagnosis of the former does not preclude finding of competence). Finally, the Court notes that Applicant ably represented himself at trial and there is nothing in the record to suggest that the trial court's competency decision was flawed or that it should have been revisited. *See United States v. Cornejo-Sandoval*, 564 F.3d 1225,

1234 (10th Cir. 2009) (citation omitted) (noting that demeanor during trial is relevant to appellate review of ultimate competency decision); *see also Record* vol. March 17, 1999 at 77-78 (praising Applicant for his performance at trial).  Upon careful review of the record, the Court finds that neither the trial court's nor the CCA's findings were clearly erroneous.  In the absence of a violation of a federal right, or any unreasonable application of the facts by the state courts, habeas corpus relief is not available.  Accordingly, Claims 31 & 32 are denied.

## IV.  CONCLUSION

In reviewing the merits of the Application, the Court finds that Applicant is not entitled to relief pursuant to 28 U.S.C. § 2254.  No evidentiary hearing is required.  Accordingly, for the reasons stated above, the Court orders that the Second Amended Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be DENIED and that this case be DISMISSED WITH PREJUDICE.

After conducting a review of the entire record in this case, the Court finds that no reasonable jurist could disagree about Applicant's lack of entitlement to relief.  *Miller-El*, 537 U.S. at 327.  Accordingly,

IT IS FURTHER ORDERED that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

DATED:  February   28  , 2011

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge